FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# UNITED STATES DISTRICT COURT

**Dec 07, 2021**

# EASTERN DISTRICT OF WASHINGTON

SEAN F. McAVOY, CLERK

| | |
|---|---|
| RAY E.,[1] | No. 1:20-cv-03147-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | ECF Nos. 20, 25 |
| Defendant. | |

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 20, 25.  The parties consented to proceed before a magistrate judge.  ECF No. 6.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 20, and denies Defendant's motion, ECF No. 25.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.920(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

1  work[,] but cannot, considering his age, education, and work experience, engage in

2  any other kind of substantial gainful work which exists in the national economy."

3  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

4        The Commissioner has established a five-step sequential analysis to

5  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

6  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

7  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

8  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

9  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

10  404.1520(b), 416.920(b).

11       If the claimant is not engaged in substantial gainful activity, the analysis

12  proceeds to step two.  At this step, the Commissioner considers the severity of the

13  claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

14  claimant suffers from "any impairment or combination of impairments which

15  significantly limits [his or her] physical or mental ability to do basic work

16  activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

17  416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

18  however, the Commissioner must find that the claimant is not disabled.  *Id.*

19       At step three, the Commissioner compares the claimant's impairment to

20  severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On August 14, 2013, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging an amended

ORDER - 6

disability onset date of April 1, 2013.[3]  Tr. 92-93, 241-55, 645.  The applications

were denied initially and on reconsideration.  Tr. 172-80, 182-93.  Plaintiff

appeared before an administrative law judge (ALJ) on September 22, 2015.  Tr.

38-87.  On March 1, 2016, the ALJ denied Plaintiff's claim.  Tr. 15-37.  Plaintiff

appealed the denial, resulting in a remand from this Court.[4]  Tr. 792-818.  Plaintiff

appeared for a remand hearing on January 29, 2020, Tr. 675-95, and a

supplemental hearing to take medical expert testimony on June 10, 2020, Tr. 696-

761.  On June 30, 2020, the ALJ again denied Plaintiff's claim.  Tr. 642-74.

    At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through June 30, 2014, has not engaged in

substantial gainful activity since April 1, 2013.  Tr. 647.  At step two, the ALJ

found that Plaintiff has the following severe impairments: right shoulder bursitis

––––––––––––––––––––

[3] Plaintiff previously applied for Social Security Disability and supplemental

security income benefits on April 21, 2009, which was denied initially and not

appealed; Plaintiff again applied for benefits on August 15, 2011, which resulted in

an April 26, 2013 Order of Dismissal.  Tr. 88-91, 95.

[4] Plaintiff also filed a new application for supplemental security income benefits on

June 5, 2017; the applications were consolidated.  Tr. 645.

and joint arthrosis, degenerative joint disease of the right hip, degenerative disc disease of the lumbar spine, and bilateral carpal tunnel syndrome.  Tr. 648.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 653.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] could lift and/or carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for 6 hours as well as sit for 6 hours, with normal breaks, in an 8-hour workday; he could push and/or pull, including operation of hand and [foot] controls, without limit except as required for lifting and carrying; he could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; he could balance without limit; he could occasionally stoop, kneel, crouch, and crawl; he has had no manipulative, visual, or communication limitations; and he must avoid concentrated exposure to hazardous machinery and unprotected heights.

Tr. 653.

At step four, the ALJ found Plaintiff is capable of performing his past relevant work as a store manager and disc jockey.  Tr. 664.  In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as production assembler, mailroom clerk, and hand packager.  Tr. 665.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the

ORDER - 8

Social Security Act, from the alleged onset date of April 1, 2013, through the date of the decision.  Tr. 666.

Per 20 C.F.R. §§ 404.984, 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-two analysis; and

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 20 at 2.

## DISCUSSION

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of David Lindgren, M.D.; Rory Sumners, M.D.; and Jeremiah Crank, M.D.  ECF No. 20 at 4-11.

ORDER - 9

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ in this case failed to follow this Court's 2018 Order, which instructed the ALJ to reconsider the medical opinion evidence, including Dr. Lindgren's opinion.  Tr. 815-16.  "The mandate of a higher court is controlling as to matters within its compass." *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 168 (1939).  An administrative agency is bound on remand to apply the legal principles set out by the reviewing court.  *Jackson v. Berryhill*, No. 3:17-CV-05312-DWC, 2018 WL 1466423, at *2 (W.D. Wash. Mar. 26, 2018) (citing *Ischay v. Barnhart,* 383 F.Supp.2d 1199, 1213-14 (C.D. Cal. 2005); *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989) (citations omitted) (deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review)).  In Social Security cases, when the Appeals Council remands a case to the ALJ, the ALJ must take any action ordered by the Appeals Council and must follow the specific instructions of the reviewing court.  20 C.F.R. §§ 404.977, 416.1477; *Samples v. Colvin,* 103 F. Supp. 3d 1227, 1231-31 (D. Or. 2015).

ORDER - 11

The ALJ adopted the prior findings regarding Dr. Sumner and Dr. Crank's opinions and stated, "I need not address these opinions because the court did not identify error in the 2016 decision's analysis." Tr. 661. Defendant argues the ALJ correctly found this Court identified no errors regarding the prior ALJ's analysis of Dr. Crank and Dr. Sumner's opinions. ECF No. 25 at 20. However, the 2018 Order specifically directed the ALJ to reconsider Dr. Lindgren's opinion and stated the ALJ's findings regarding "other medical opinions" was impacted by the ALJ's selective interpretation of the longitudinal medical evidence, and the ALJ was instructed on remand to "readdress the medical evidence," and "reconsider the medical opinion evidence." Tr. 815-16. The ALJ added some additional analysis of Dr. Crank's opinion but failed to readdress Dr. Sumner's opinion. The ALJ erred by adopting the prior erroneous analysis of Dr. Sumner's opinion without reconsideration of the evidence. As the case is being remanded to reconsider Dr. Sumner's opinion, the ALJ is also instructed to reconsider the medical opinions of Dr. Lindgren and Dr. Crank, and incorporate the opinions into the RFC, or set forth a new analysis of the opinions that contains specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

### 1. Dr. Lindgren

For the purposes of the remand, the Court notes the ALJ committed several errors requiring reconsideration on remand. Dr. Lindgren rendered five separate

ORDER - 12

opinions on Plaintiff's functioning.  Tr. 608-12, 614-15, 1044-48, 1183-85 (duplicated at Tr. 1186-88, 2017-24), 1189, 1199-1201.  As Dr. Lindgren's opinions were contradicted by the opinion of Eric Schmitter, M.D., Tr. 709-11, the ALJ was required to give specific and legitimate reasons, supported by substantial evidence, to reject Dr. Lindgren's opinions.  *See Bayliss*, 427 F.3d at 1216.

a.   March 2015

On March 26, 2015, Dr. Lindgren rendered an opinion on Plaintiff's functioning.  Tr. 608-12.  Dr. Lindgren diagnosed Plaintiff with bilateral carpal tunnel syndrome, intervertebral disc disease, and degenerative joint disease of the right hip and right shoulder.  Tr. 609.  Dr. Lindgren opined Plaintiff's impairments cause marked limitations in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch, and Plaintiff is unable to meet the demands of even sedentary work.  Tr. 609-10.  The limitations were expected to last 12 months with treatment.  Tr. 610.  The ALJ gave no weight to Dr. Lindgren's opinion.  Tr. 664.

First, the ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's lack of orthopedic care after his 2014 surgery.  *Id.*  An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  However, the fact that a claimant fails to pursue treatment is not directly relevant to the weight of a medical provider's opinion.  *See* 20 C.F.R.

ORDER - 13

§§ 404.1527(c), 416.927(c).  The consistency of a medical opinion with the record

as a whole is also a relevant factor in evaluating a medical opinion.  *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th

Cir. 2007).  The ALJ found Plaintiff failed to seek orthopedic follow up, despite

being directed to do so, and he did not complete physical therapy.  Tr. 662.

Plaintiff was seen by orthopedists in June 2015, Tr. 631-32, and again in July

2017, Tr. 1092-93.  In May 2017, Dr. Snyder diagnosed Plaintiff with

femoroacetabular impingement of the right hip, and treated Plaintiff with a hip

injection, Tr. 1823, and an MRI of the hip demonstrated multiple probable

abnormalities, Tr. 1824.  There are gaps in Plaintiff's treatment, but the ALJ failed

to consider that Plaintiff lacked insurance for a period of time, his insurance would

not authorize additional physical therapy, and a specialist he was referred to did

not take his insurance.  Tr. 573-73, 712, 1716, 1723.  The ALJ erred in rejecting

Dr. Lindgren's opinion due to Plaintiff's lack of follow-up care, without

considering the reasons Plaintiff did not have ongoing care for his hip impairment.

Second, the ALJ found Dr. Lindgren's opinion was inconsistent with the

objective evidence related to Plaintiff's back impairment.  Tr. 662.  Relevant

factors when evaluating a medical opinion include the amount of relevant evidence

that supports the opinion and the consistency of the medical opinion with the

record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  The ALJ

ORDER - 14

1  found the medical evidence demonstrated only minimal degenerative disc changes,

2  and Plaintiff did not consistently report back pain nor seek treatment for it.  Tr.

3  656.  The ALJ stated the objective evidence does not demonstrate a severely

4  limiting lumbar spine disorder.  Tr. 662.  However, the ALJ found Plaintiff's

5  degenerative disc disease of the lumbar spine is a severe impairment.  Tr. 648.  The

6  ALJ did not discuss any of the objective evidence related to Plaintiff's back

7  impairment except the imaging.  Tr. 648, 662.  This Court previously found the

8  ALJ cherry picked the records related to Plaintiff's back impairment and noted

9  there is evidence of decreased range of motion in Plaintiff's back.  Tr. 812-813.

10  The ALJ again did not provide an analysis of Plaintiff's range of motion in his

11  back, or other relevant examination findings, Tr. 625.  The ALJ erred in selectively

12  discussing the medical evidence.  Without more of an analysis of the evidence, the

13  Court cannot determine if the ALJ's finding is supported by substantial evidence.

14  The ALJ is instructed to reconsider the March 2015 opinion.

15          b.  January 2017

16          On January 19, 2017, Dr. Lindgren diagnosed Plaintiff with degenerative

17  joint disease of the right hip and right shoulder.  Tr. 1045.  He opined Plaintiff's

18  impairments case marked limitations in his ability to sit, stand, walk, lift, carry,

19  handle, push, pull, reach, stoop, and crouch.  *Id.*  He also opined Plaintiff is unable

20  to meet the demands of even sedentary work, and the limitations were expected to

1   last 12 months with treatment.  Tr. 1046.  The ALJ gave the opinion no weight.

2   Tr. 664.

3          First, the ALJ found Dr. Lindgren's opinion was inconsistent with Plaintiff's

4   lack of orthopedic care.  Tr. 663.  An ALJ may discredit a claimant's symptom

5   complaints if the claimant fails to show good reason for failing to follow treatment

6   recommendations.  *Smolen*, 80 F.3d at 1284.  However, the fact that a claimant

7   fails to pursue treatment is not directly relevant to the weight of a medical

8   provider's opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  As discussed

9   *supra,* Plaintiff had some orthopedic care, and the ALJ erred in failing to consider

10  the reasons Plaintiff had gaps in treatment.

11         Second, the ALJ found Dr. Lindgren's opinion was inconsistent with the

12  record as a whole.  Tr. 663.  Relevant factors when evaluating a medical opinion

13  include the amount of relevant evidence that supports the opinion and the

14  consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504

15  F.3d at 1042; *Orn*, 495 F.3d at 631.  The ALJ noted the examination findings

16  documented no clubbing, cyanosis, or edema, and normal gait and strength, but

17  acknowledged the documented tenderness and limited range of motion, which the

18  ALJ deemed "largely subjective in nature."  Tr. 663.  The ALJ does not provide an

19  analysis as to how a lack of clubbing, cyanosis, or edema is inconsistent with a

20  disabling shoulder or hip impairment.  Further, the examination documents

1  significantly decreased ranges of motion and tenderness.  Tr. 1046-47, 1628.  The

2  ALJ stated the extremity findings were normal, and the right shoulder problem was

3  not referenced in the treatment note, and thus it is unclear what basis Dr. Lindgren

4  based the evaluation form on.  Tr. 663.  However, Plaintiff had significantly

5  limited range of motion in his right shoulder.  Tr. 1047.  The ALJ also found the

6  opinion was inconsistent with Plaintiff's ability to work, but the ALJ does not set

7  forth any analysis of how Plaintiff's work was inconsistent with the opinion; there

8  is no documentation of how many hours Plaintiff was working, nor the physical

9  tasks required for the work.  Tr. 663.  While the ALJ pointed to some normal

10  examination findings and reports of Plaintiff working, without further analysis of

11  the findings, and how the work is inconsistent with the opinion, the Court cannot

12  find the ALJ's finding is supported by substantial evidence.  The ALJ also noted

13  that Dr. Lindgren's opinions were based on varying impairments over the years;

14  however, all of the opinions are disabling, and the fact that the potentially disabling

15  limitations were caused by varying impairments over the span of several years is

16  not reason alone to reject all of the opinions.  The ALJ is instructed to reconsider

17  January 2017 opinion.

18        c.  April 2018

19       On April 24, 2018, Dr. Lindgren examined Plaintiff and wrote a letter stating

20  Plaintiff has severe degenerative changes in his right hip, which are severe enough

ORDER - 17

to prevent him from being able to find and keep gainful employment.  Tr. 1189,

1199-1201.  In the accompanying examination record, Dr. Lindgren noted that

Plaintiff has ongoing significant pain and difficulty sitting or standing for long

periods of time.  Tr. 1199.

The ALJ did not address Dr. Lindgren's April 2018 opinion.  A statement by

a medical source that a claimant is "unable to work" is not a medical opinion and is

not due "any special significance."  20 C.F.R. §§ 404.1527(d), 416.927(d).

Nevertheless, the ALJ is required to consider medical source opinions about any

issue, including issues reserved to the Commissioner, by evaluating the opinion in

light of the evidence in the record and applying the applicable factors.  SSR 96-5p

at *2-3.  The ALJ erred in failing to address Dr. Lindgren's April 2018 opinion.

On remand, the ALJ is instructed to consider the April 2018 opinion.

d.  July 2015 and August 2018

On July 23, 2015, Dr. Lindgren rendered another opinion on Plaintiff's

functioning.  Tr. 614-15.  Dr. Lindgren diagnosed Plaintiff with right hip pain,

acetabular labrum tear, and low back pain.  Tr. 614.  He opined Plaintiff needs to

lie down during the day, working on a regular basis would cause Plaintiff's

condition to deteriorate, and Plaintiff would miss four or more days per month if he

worked full-time.  Tr. 614-15.  The ALJ gave the opinion no weight.  Tr. 664.

On August 16, 2018, Dr. Lindgren diagnosed Plaintiff with torn labrum in the right hip. Tr. 1184. He opined the impairment caused severe limitations in Plaintiff's ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. *Id.* Dr. Lindgren further opined Plaintiff was unable to meet the demands of sedentary work, and the limitations would last Plaintiff's lifetime, despite available treatment. Tr. 1185. The ALJ gave the opinion no weight. Tr. 664.

As the case is being remanded to address the other opinions discussed herein, the ALJ is instructed to reconsider all of Dr. Lindgren's opinions, including the July 2015 and August 2018 opinions, and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinions.

### 2. Dr. Lindman

On February 29, 2020, Linda Lindman, Ph.D., performed a psychological examination and rendered an opinion on Plaintiff's functioning. Tr. 2011-16. Dr. Lindman diagnosed Plaintiff with adjustment disorder with anxiety and depressed mood. Tr. 2015. Dr. Lindman opined Plaintiff has a lack of motivation that would negatively impact his current and past work environments, his ability to maintain regular attendance in the workplace is mildly impaired, and he otherwise is not limited by mental health symptoms. Tr. 2015-16. The ALJ did not specify the weight given to Dr. Lindman's opinion but appears to have adopted Dr. Lindman's

ORDER - 19

opinion that Plaintiff has no more than mild limitations.  Tr. 650-51.  Plaintiff

argues the ALJ erred in relying on Dr. Lindman's examination and opinion.  ECF

No. 20 at 13, 19-21.

Plaintiff contends Dr. Lindman's opinion is inconsistent with the other

psychological opinions in the record, ECF No. 20 at 13, and Dr. Lindman did not

document objective measures or validity testing to support her suspicion Plaintiff

put forth poor effort on the WAIS-IV testing, and thus her suspicions of

malingering were unwarranted and unsupported, *id.* at 20, ECF No. 26 at 2.  The

Court finds the ALJ's conclusion that Dr. Lindman's examination and opinion

provides affirmative evidence of malingering is supported by substantial evidence.

Dr. Lindman examined Plaintiff and stated there was some evidence of

malingering, with poor effort on intelligence testing, and a lack of effort on

memory testing.  Tr. 655, 2013-14.  Dr. Lindman stated the intelligence testing was

far below what would be expected based on other evidence, and she believed the

intelligence test scores were likely a result of feigning and lack of effort.  Tr. 2015.

However, as the case is being remanded for reconsideration of all steps,

including step two, as discussed *infra,* this necessitates reconsideration of the

severity of Plaintiff's mental health impairments and Dr. Lindman's opinion.  On

remand, the ALJ is instructed to take testimony from a psychological expert to

ORDER - 20

determine the severity of Plaintiff's mental health impairments, and any limitations caused by the impairments.

**B. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify his mental health conditions, cognitive disorder, pain disorder, and sicca as severe impairments. ECF No. 20 at 11-16. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three. 20 C.F.R. §§ 404.1520a, 416.920a. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, the ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments" in four broad areas of functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(b)(2)-(c)(4), 416.920a(b)(2)-(c)(4). Functional limitation is measured as "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If limitation is found to be "none" or "mild,"

1   the impairment is generally considered to not be severe.  20 C.F.R. §§

2   404.1520a(d)(1), 416.920a(d)(1).  If the impairment is severe, the ALJ proceeds to

3   determine whether the impairment meets or is equivalent in severity to a listed

4   mental disorder.  20 C.F.R. §§ 404.1520a(d)(2)-(3), 416.920a(d)(2)-(3).

5       Step two is "a de minimus screening device [used] to dispose of groundless

6   claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review

7   to the requirements of step two, [the Court] must determine whether the ALJ had

8   substantial evidence to find that the medical evidence clearly established that

9   [Plaintiff] did not have a medically severe impairment or combination of

10  impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

11      The ALJ found several of Plaintiff's impairments, including his mental

12  health conditions, were non-severe.  Tr. 648-53.  The ALJ did not address

13  Plaintiff's chronic pain syndrome, thereby finding it non-severe.  Dr. Lindgren

14  diagnosed Plaintiff with chronic pain syndrome.  Tr. 1310.  As this case is being

15  remanded for the ALJ to reconsider the medical opinion evidence, including Dr.

16  Lindgren's opinion, the ALJ is also instructed to reconsider the five-step analysis

17  anew, including reconsidering Plaintiff's severe impairments at step two.

18  **C. Plaintiff's Symptom Claims**

19      Plaintiff faults the ALJ for failing to rely on reasons that were clear and

20  convincing in discrediting his symptom claims.  ECF No. 20 at 16-21.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims)).  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

ORDER - 23

1    1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

2    924 (9th Cir. 2002)).

3        Factors to be considered in evaluating the intensity, persistence, and limiting

4    effects of a claimant's symptoms include: 1) daily activities; 2) the location,

5    duration, frequency, and intensity of pain or other symptoms; 3) factors that

6    precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

7    side effects of any medication an individual takes or has taken to alleviate pain or

8    other symptoms; 5) treatment, other than medication, an individual receives or has

9    received for relief of pain or other symptoms; 6) any measures other than treatment

10   an individual uses or has used to relieve pain or other symptoms; and 7) any other

11   factors concerning an individual's functional limitations and restrictions due to

12   pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

13   404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

14   an individual's record," to "determine how symptoms limit ability to perform

15   work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

16       The ALJ found that Plaintiff's medically determinable impairments could

17   reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

18   statements concerning the intensity, persistence, and limiting effects of his

19   symptoms were not entirely consistent with the evidence.  Tr. 654.

20

ORDER - 24

## 1. Symptom Exaggeration

The ALJ found Plaintiff demonstrated some evidence of malingering.  Tr. 655 (citing Tr. 2013).  Evidence of malingering is relevant to an ALJ's determination.  *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *see also Lingenfelter,* 504 F.3d at 1036.  A specific finding of malingering is not required; affirmative evidence suggesting malingering is sufficient.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n. 1 (9th Cir. 2008).  Evidence that suggests malingering includes invalid test scores, scores that indicate exaggeration/distortion, and statements from examining doctors that indicate the doctor believes the claimant is malingering.  *Bahram H. v. Comm'r of Soc. Sec.*, No. 3:18-CV-05152-BAT, 2018 WL 6809487, at *2 (W.D. Wash. Dec. 27, 2018); *Gopher v. Comm'r of Soc. Sec.*, 281 F. Supp. 3d 1102, 1117 (E.D. Wash. 2017).  An ALJ may accept the opinion of a doctor who found a claimant was malingering, even if other doctors believe the claimant is not malingering.  *Bahram H.*, 2018 WL 6809487, at *5-6; *Bell v. Berryhill*, No. C17-5441 RSL, 2018 WL 1102167, at *2-3 (W.D. Wash. Feb. 28, 2018).

Dr. Lindman examined Plaintiff and stated there was some evidence of malingering, with poor effort on intelligence testing.  Tr. 655, 2013.  Dr. Lindman noted there was lack of effort demonstrated on memory testing, and he gave a poor effort on the WAIS-IV test.  Tr. 2013-14.  Dr. Lindman stated the intelligence

testing was far below what would be expected based on Plaintiff's mental status

examination, and was not consistent with Plaintiff's conversational interaction,

vocabulary, and reported academic history, and she believed the intelligence test

scores were likely a result of feigning and lack of effort.  Tr. 2015.  Plaintiff offers

an alternative interpretation of Dr. Lindman's examination and opinion, however

the ALJ's finding that there is evidence Plaintiff may have exaggerated his

symptoms is supported by substantial evidence.  Defendant argues the ALJ was not

required to provide clear and convincing reasons to reject Plaintiff's statements as

there was affirmative evidence of malingering.  ECF No. 25 at 4.  The ALJ

reasonably found affirmative evidence of malingering; thus, the ALJ was not

required to provide clear and convincing reasons to reject Plaintiff's symptom

testimony.  However, even if the ALJ was required to give clear and convincing

reasons to reject Plaintiff's statements, the ALJ gave multiple such reasons to

reject Plaintiff's allegations.

### 2. Inconsistent Statements

The ALJ found Plaintiff made inconsistent statements about his symptoms,

limitations, activities, and work history.  Tr. 654-56.  In evaluating a claimant's

symptom claims, an ALJ may consider the consistency of an individual's own

statements made in connection with the disability-review process with any other

existing statements or conduct under other circumstances.  *Smolen*, 80 F.3d at 1284

ORDER - 26

(The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").  Moreover, evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony.  *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).  Therefore, the tendency to exaggerate or engage in manipulative conduct during the administrative process is a permissible reason to discount the credibility of the claimant's reported symptoms.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

While Plaintiff testified that he has not worked during the relevant adjudicative period, the ALJ noted there are multiple references to Plaintiff working, including Plaintiff reporting to providers that he was working in 2016, 2017, and 2020.  Tr. 655 (citing Tr. 744, 1111, 1118, 1128, 1181, 1704, 2086).  As discussed *supra,* a provider also noted there was evidence of malingering.  Tr. 655, 2013.  The ALJ also found Plaintiff made inconsistent statements at his hearing compared to the statements made at counseling appointments.  Tr. 655.  The ALJ noted that Plaintiff reported to a provider that he had spent $5,000 at the beach in August 2017, Tr. 1135, but at his hearing, Plaintiff denied making such a statement, Tr. 747.  Tr. 655.  The ALJ noted that Plaintiff denied losing $30,000, Tr. 746, though he told a provider that he had lost $30,000 to a friend, Tr. 1118.

ORDER - 27

Tr. 654.  Plaintiff testified he is not his daughter's sole caregiver, Tr. 57-58, but

reported to a provider he was her sole care provider, Tr. 1385.  Tr. 655.  Plaintiff

argues he did not make inconsistent statements as even if he was working, he had

difficulties working, and there is evidence he was not his daughter's sole caregiver.

ECF No. 20 at 17.  However, the ALJ's finding that Plaintiff made inconsistent

statements is supported by substantial evidence.  This was a clear and convincing

reason to reject Plaintiff's symptom claims.

### 3.  Work History

The ALJ found Plaintiff's work after his alleged onset date was inconsistent

with his allegations.  Tr. 654-55.  Working with an impairment supports a

conclusion that the impairment is not disabling.  *See Drouin v. Sullivan*, 966 F.2d

1255, 1258 (9th Cir. 1992); *see also Bray*, 554 F.3d at 1227 (seeking work despite

impairment supports inference that impairment is not disabling).  While Plaintiff

denies working during the relevant time period and testified he did not own a car

dealership, the ALJ noted multiple references in the record to Plaintiff working and

owning a car dealership.  Tr. 654-55, 690.  Plaintiff reported working at a car

dealership, owning a car dealership, owning a business, having cars stolen from the

dealership he owns, and needing to get in and out of vehicles frequently, from

2016 through 2020.  Tr. 655, 744, 1111, 1118, 1128, 1181, 1704, 2086.  Plaintiff

argues that even if he was working during the relevant time, he reported neglecting

ORDER - 28

his business and not going to work, which is consistent with his allegations.  ECF No. 20 at 17.  However, there are references to Plaintiff going to work, which is inconsistent with his allegations of a complete inability to work and his statements that he has not worked during the relevant period.  On this record, the ALJ reasonably found Plaintiff's work after his alleged onset date was inconsistent with Plaintiff's allegations.  This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's claims.

### 4. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his allegations.  Tr. 654-56.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  The ability to care for others without

ORDER - 29

1   help has been considered an activity that may undermine claims of totally disabling

2   pain. *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a

3   basis for the ALJ to discredit the Plaintiff's symptom claims, the record must

4   identify the nature, scope, and duration of the care involved and this care must be

5   "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d

6   664, 675-76 (9th Cir. 2017).

7        The ALJ noted that Plaintiff reported keeping an eye on his landlord's

8   warehouse in exchange for rent, working and owning a business, traveling to the

9   beach with his girlfriend, traveling to Las Vegas with his daughter, and being the

10  sole care giver for his daughter, who is disabled.  Tr. 654-55, 688, 1497.  Plaintiff

11  testified at his hearing that he has not been his daughter's sole care provider, as he

12  has shared custody, and he only sees her every other weekend and four hours on

13  Wednesdays.  Tr. 687.  Plaintiff argues the ALJ did not inquire as to whether

14  Plaintiff had migraines or was exposed to bright lights on his trip to Las Vegas,

15  thus the ALJ cannot find Plaintiff's trip to Las Vegas was inconsistent with his

16  allegations of disabling migraines.  ECF No. 20 at 19.  However, Plaintiff reported

17  flying to Las Vegas, attending a concert, and spending two days there, and did not

18  report any issues or symptoms during the trip.  Tr. 688-89, 1497.  Plaintiff also

19  testified at his first hearing that he traveled to Seattle to see specialists, and to

20  Portland with friends to attend a birthday party and visit friends, and he was able to

drive himself to appointments and his hearing.  Tr. 54-56.  Plaintiff reported

handling his own personal care, chores, cooking, and managing finances.  Tr. 655,

2014.  The ALJ did not set forth an analysis as to the nature and scope of

Plaintiff's care for his daughter, and did not explain how Plaintiff's activities, such

as one-time trips, are inconsistent with Plaintiff's symptom claims.  However, the

error is harmless as the ALJ provided other clear and convincing reasons,

supported by substantial evidence, to reject Plaintiff's claims.  *See Molina,* 674

F.3d at 1115.

### 5. *Objective Medical Evidence*

The ALJ found Plaintiff's allegations were inconsistent with the objective

medical evidence.  Tr. 656-58.  An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is

not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v.*

*Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601; *Burch v.*

*Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical

evidence is a relevant factor, along with the medical source's information about the

claimant's pain or other symptoms, in determining the severity of a claimant's

symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§

404.1529(c)(2), 416.929(c)(2).

ORDER - 31

1    The ALJ found the objective evidence was inconsistent with Plaintiff's

2    complaints of disabling physical symptoms.  Tr. 656-57.  The ALJ noted Plaintiff's

3    imaging has largely been normal or noted only mild/minimal findings, although

4    Plaintiff had a small labral tear in April 2013.  *Id.* (citing, e.g., Tr. 343, 404, 422,

5    540, 1690).  While Plaintiff had worsening of his pain, the ALJ found he did not

6    seek ongoing orthopedic care and did not continue physical therapy.  Tr. 657

7    (citing Tr. 1545, 1696).  The medical records note Plaintiff was followed by

8    orthopedics and planned to have an orthopedic evaluation, but Plaintiff reported his

9    appointment at one facility had to be postponed due to his lung impairment, and

10    another specialist did not take his insurance, and at the time of the hearing he had

11    not been seen for orthopedic care.  Tr. 712, 1545, 1696.  The ALJ also found

12    Plaintiff did not seek ongoing care for his right shoulder impairment after surgery.

13    Tr. 657 (citing Tr. 637-38).  Plaintiff's pain was noted as managed with

14    medication.  Tr. 657 (citing Tr. 1688).  Plaintiff has reported migraines, but often

15    denied headaches, his cervical spine imaging and brain MRI were normal, and he

16    did not see a neurologist or seek ongoing care for his migraines.  Tr. 656 (citing,

17    e.g., Tr. 1314, 1327, 1518, 1585).  Plaintiff reported carpal tunnel syndrome

18    symptoms, but reported improvement with injections and braces, and did not seek

19    additional care when he reported worsening symptoms.  Tr. 657 (citing Tr. 1700,

20    1704).

The ALJ also found the objective evidence was inconsistent with Plaintiff's complaints of disabling mental health symptoms.  Tr. 651-52.  The ALJ noted that Plaintiff had many normal mental status examinations throughout the record.  Tr. 652 (citing, e.g., Tr. 379-81, 394-95, 431, 435).  Plaintiff also did not seek ongoing mental health care.  Tr. 652.  Plaintiff argues the ALJ failed to consider his reasons for not seeking treatment, including insurance coverage issues, unsuccessful treatment methods, and his mental health symptoms.  ECF No. 20 at 21.  Plaintiff argues he lacked insurance for a period of time, and he had difficulty seeing a specialist and physical therapist due to insurance issues.  *Id.* at 5 (citing Tr. 572-73, 712, 1696, 1716).  While the ALJ failed to consider the reasons Plaintiff did not seek treatment, any error is harmless as the ALJ pointed to multiple periods when Plaintiff was insured and he did not seek ongoing care, and the ALJ provided other clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptom complaints.

**D. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 26 at 11.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

ORDER - 33

When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a

ORDER - 34

whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

F.3d at 1021.

The Court finds further proceedings are necessary to resolve conflicts in the

record, including conflicting medical opinions.  The medical expert, Dr. Schmitter,

testified Plaintiff was capable of light work until his hip surgery, and after the hip

surgery, he was capable of medium work.  Tr. 660-61, 709-11.  Dr. Schmitter was

the only evaluator to review the entire medical record, and the only orthopedic

specialist to render an opinion in the case.  Tr. 660-61.  As such, the conflict

between Dr. Schmitter's opinion and the rejected opinions requires resolution.

Further, there are conflicting psychological opinions in file; on remand, the ALJ is

instructed to consider whether calling a psychological expert to testify at the

hearing is necessary.  Additionally, the Court cannot remand the case for

immediate benefits due to evidence in the record that creates serious doubt that

Plaintiff is disabled.  As discussed *supra,* there is affirmative evidence of

malingering in the medical records.  Further, although there is limited information

about the work activity, there are numerous references to Plaintiff working

throughout the relevant time period.  As such, the case is remanded for further

proceedings consistent with this Order.

# CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED December 7, 2021.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36